BACON et al. v. WIMMER et al.

No. 19180. Opinion Filed May 8, 1928.

(Syllabus.)

1. Municipal Corporations—Charter Cities —Effect of Charter Provision Requiring All Resolutions of Council to be Presented to Mayor for Approval.

While the provisions of a city charter, which has been duly adopted and approved, constitute the organic law of the city and supersede the statutory law of the state in conflict with such charter provisions in so far as such statutory laws relate to purely municipal matters, the provision of such city charter requiring all resolutions passed by the council to be presented to the mayor for his approval and signature has reference only to such resolutions as are contemplated by charter provisions, or statutory enactment not in conflict with the charter.

2. Same—State Paving Law Controlling Where City Charter Silent on Subject.

Where a city charter contains no provisions relative to street paving, the general paving law of the state governs.

3. Same—Validity of Contract Entered Into by City Council Without Approval of Mayor.

Approval by the mayor of a contract entered into by the city council of a city operating under charter form of government is not essential in the absence of a special requirement to that effect by the charter or statutes of the state.

Error from District Court, Pottawatomie County; Charles C. Smith, Assigned Judge.

Action by G. W. Bacon et al. against Neil Wimmer et al. for injunctive relief. Judgment for defendants, and plaintiffs appeal. Affirmed.

E. C. Stanard, Leonard Carey, and Jere G. Crowley, for plaintiffs in error.

F. H. Reily, City Atty., Waldrep & Jones, and G. A. Paul, for defendants in error.

MASON, V. C. J. The parties herein occupy the same relative position as in the trial court, and will be referred to as plaintiffs and defendants, as they there appeared.

The four plaintiffs, being taxpayers of as many different paving districts in the city of Shawnee, commenced four actions, which were later consolidated, against Neil Wimmer, mayor, and Cecil Switzer, Carl Groce, L. E. Clary, J. Frank Earnest, Harry A. Smith, and K. Pat Murphy, members of the city council of Shawnee, and H. L. Cannady Company, a corporation, to enjoin said officials from accepting bids submitted by and awarding contracts to said company for the improvement of paving districts Nos. 45, 46, 47, and 51 of said city, and to enjoin said company from entering upon the performance of such contracts.

Temporary restraining orders were issued on February 1, 1928, and the hearing on the petitions was had on February 20, 1928, at which time the trial court sustained the defendants' demurrers to the evidence of the plaintiffs and rendered judgment for the defendants.

The evidence of plaintiffs disclosed that on August 16, 1927, the governing body of

130-10

the city of Shawnee, by resolutions, created paving districts Nos. 45, 46, 47, and 51, together with other paving districts, and passed resolutions instructing the city engineer to prepare plans, profiles, specifications, etc., which were prepared, and on September 13, 1927, resolutions were passed by the city council adopting the same and providing for the publication of such resolutions, which was had. On December 6, 1927, other resolutions were passed which declared that no protest had been filed with the city clerk, and wherein it was determined to proceed with the improvement of said districts and wherein the clerk was instructed to advertise for sealed proposals by contractors for furnishing the material and performing the paving work. These resolutions were duly published and a number of contractors submitted bids on December 20, 1927.

No contention is made that all of said proceedings had up to this point were not proper or that they were not in compliance with the applicable statutes. No action was taken on said bids until January 31, 1928, when the bids were opened and those of H. L. Cannady Company were found to be the lowest and were approved, and the contract awarded to said company and the bonds which said company had filed were also approved. The foregoing action was taken in the form of resolutions which were adopted by a favorable vote of three of the five members of the council present and a negative vote of two of such members. Thereafter, on February 7, 1928, the mayor prepared and filed with the council what purported to be a written veto of said resolutions, wherein he expressed himself as not being certain as to whether he had such authority under the provisions of the city charter. Such purported veto seems to be founded on the fact that the mayor and certain taxpayers residing in said districts favored the use of a different material from that selected.

The trial court held that the approval of said resolutions was not subject to the mayor's veto, and rendered judgment for the defendants, from which the plaintiffs appeal.

The sole contention of plaintiffs in error for reversal is that the mayor was justified and authorized, under the provisions of the charter of Shawnee and the statutes of Oklahoma, to veto said resolutions, and that by reason thereof the city council was without power to enter into said contracts and to approve said bonds of the H. L. Cannady Company and that said company was without contracts for the construction of said

improvements in said districts, and that the trial court, therefore, erred in sustaining the defendants' demurrer to the evidence of the plaintiffs.

Although the city of Shawnee is governed by a charter, adopted under the provisions of section 3, art. 18, of the Constitution of Oklahoma, which supersedes all laws of the state in conflict with such charter provisions which regulate matters of purely municipal concern, yet there is no provision in said charter relative to street paving, and, therefore, the state law governs. Staley v. Park, 125 Okla. 233, 257 Pac. 311.

Plaintiffs contend, however, that the street paving law contains no rules of procedure in matters of administration and the mayor had the authority to veto said resolutions under section 18, art. 4, of the charter of said city, which provides:

"Signing of Ordinances: Approval of Mayor. Every ordinance, order, or resolution which shall have been passed by the council shall before it becomes effective be signed by the city clerk or other person authorized by the council to sign the same on its behalf, and be presented to the mayor for his approval and signature if he approves of it; if not, he shall indorse thereon the date of the presentation to him and shall return it to the city clerk with his objections in writing. The city clerk shall indorse thereon the date of its return to him, and the council shall proceed to reconsider the passage of the ordinance over the mayor's veto. The vote in all cases of reconsideration shall be by ayes and noes, and the names of the members voting for or against it shall be entered upon the journal."

It will be observed that said section is headed "Signing of Ordinances: Approval of Mayor," and that no reference is made to resolutions. The first part of the section, however, provides that every ordinance, order, or **resolution** shall be presented to the mayor for his approval and signature, if he approves it, but the last portion of the section indicates that the veto power of the mayor extends only to ordinances. It is not necessary to decide in the instant case whether this section authorizes the mayor to veto resolutions, but, for the purpose of this appeal, we may assume that it does.

We have heretofore called attention to the fact that no procedure is provided by the city charter relative to street paving, and hence no such resolution awarding paving contracts and approving bonds is required by said charter. Neither is there a provision in the general paving law of the state which requires such resolutions.

In the case of Staley v. Park, supra, this court was considering a similar resolution which had not been published, although the city charter of Walters required all resolutions to be published, and this court held that, notwithstanding such charter provisions, the resolution not being required by either the state paving law or the city charter, it was not within the contemplation of that provision of the charter requiring a publication of resolutions. There can be no distinction or difference in principle between that case and the case at bar, and the resolutions under consideration, having been enacted without authority or without necessity, do not come within the purview of the charter authorizing vetoing thereof by the mayor. The purpose of the charter, at most, gives the mayor the right to veto only such resolutions as are or may be authorized under the provisions of the general law of the state or the special provisions of the charter.

Counsel for plaintiffs in error, in their brief, concede that the action of the city council was "nothing more nor less than a formal acceptance of the H. L. Cannady Company bid* * * without the approval of the mayor." It is then urged that under section 18, art. 4, of the charter, as above set out, the mayor had authority to veto such action. In construing that section, which nowhere mentions contracts of any kind, we must also construe article 18, sec. 1, which provides:

"Every contract made by the city shall be let to the lowest responsible bidder furnishing security for its performance satisfactory to the council; provided, that the city council shall first cause notice to be published in the official newspaper of the city, inviting proposals to perform same; and the city shall not be bound by any contract unless such publication be first made; provided, however, that in the construction or repair of all public utilities or improvements, the city may perform such construction, or repair without contract, through the board of public works and its employes."

Said section, however, confers no authority upon the mayor to supervise the judgment of the city council in the letting of contracts for public improvements. The defendant company, after preliminary proceedings, and due publication, which are not questioned herein, submitted bids for said work, and construction and statutory bonds were filed at the same time. Both the bids and the bonds were approved by the city council, and that is all that was required under article 18, sec. 1, of the city charter, and the attempted veto of the mayor, not being authorized, was ineffective.

In 43 Corpus Juris, p. 354, it is said:

"Where separate functions are devolved upon the board of aldermen, distinct from those vested in the mayor and aldermen, the approval of the mayor is not required to acts passed or done in this exceptional character."

The general rule is also announced in 43 Corpus Juris, p. 532, as follows:

"Approval by the mayor of ordinances or resolutions passed by the common council of a municipality is not essential in the absence of a special requirement to that effect by the charter or statute; and a fortiori, where the Legislature declares that a majority vote of the council for the passage of an ordinance shall be decisive, the mayor's approval of the ordinance is not necessary."

We conclude that when the city council let the contracts to the lowest bidder furnishing security for performance thereof satisfactory to the city council, the provisions of article 18 of the city charter, relative to the letting of contracts for public improvements, was in every respect complied with, and the mayor was without authority to veto said action.

The judgment of the trial court is, therefore, affirmed.

BRANSON, C. J., and HARRISON, LESTER, HUNT, CLARK, RILEY, and HEFNER, JJ., concur.

Note.—See under (1) 43 C. J. p. 534, §829. (2) 28 Cyc. p. 941. (3) C. J. p. 532, §827. See under (1, 3) 19 R. C. L. p. 892; 3 R. C. L. Supp. 982; 6 R. C. L. Supp. p. 1148.